IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT P. CUMMINS and CUMMINS & )
CRONIN, LLC, )
 )
                                                               )   No. 05 C 3396
            Plaintiffs,   )
 )  Suzanne B. Conlon, Judge
v.                                            )
 )
JOHN T. HEANEY and JOHN T. HEANEY, )
A LAW CORPORATION, )
 )
            Defendants.   )

## MEMORANDUM OPINION AND ORDER

This dispute concerns two lawyers who represented opposing parties in California litigation. Robert Cummins and Cummins & Cronin, LLC (collectively "Cummins") sue John Heaney and the John Heaney law corporation (collectively "Heaney") for defamation *per se*, defamation *per quod* and false light. Cummins claims Heaney defamed him through e-mail correspondence. Heaney moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

For purposes of the motion, the court accepts all well-pleaded allegations in the complaint as true and all reasonable inferences are drawn in Cummins' favor. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Cummins is an experienced trial attorney with a reputation for integrity, honesty and professionalism. Compl. ¶ 8. Cummins was elected a 2004 Laureate of the Academy of Illinois Lawyers, has served as chairman and a member of several legal committees and boards, and has lectured on trial practice and professional conduct. *Id.* at ¶¶ 8-15. In 2004, Cummins was retained to represent two defendants in a California case. *Id.* at ¶ 17. The

1

two clients were referred to Cummins by the law firm of Shefsky & Froelich Ltd., who represented another defendant in the same action. *Id.* Heaney represented the plaintiffs. *Id.* at ¶ 18. The case was set for trial on March 4, 2005.

A week before trial, Cummins' ten year old grandson was diagnosed with a brain tumor. *Id.* at ¶ 20. Upon learning of his grandson's diagnosis, Cummins immediately notified the defendants, opposing counsel and his co-counsel at the Shefsky firm that the emergency might necessitate a short trial continuance. *Id.* Cummins was present with his grandson during emergency testing and surgery and later informed all parties that a continuance was necessary. *Id.* at ¶¶ 21-22. The California court granted a two-week continuance. *Id.* at ¶ 23.

Due to one plaintiff's voluntary bankruptcy and removal to bankruptcy court, the trial did not occur in March 2005. *Id.* at ¶ 24. The parties agreed to remand the case to state court and to conduct formal mediation. *Id.* Through e-mail communications, with the subject line "Mediation - dciv/LABN v. USAB, et al.," the parties discussed possible mediation dates. *See* Compl. Ex. A.[1] On June 3, 2005, Heaney sent the following e-mail to other lawyers on the case - specifically to Thomas Cronin, Robert Cummins, Michael Sheehan and Douglas Ramsey:

Gentleman:

> The 14th is not going to work. I'm still good for the 6th or 7th, but, unless something has changed at the defendants' end, it looks like those dates won't work either. The good news is that with the protracted delay between now and the new trial date the time pressures are off. We might therefore begin considering dates in the July-September range.
>
> As for compliance with the stipulation, I note that we have dismally failed, *through no fault of Plaintiffs*. The stipulation and order directed us to select a

---

[1] Complaint exhibits are considered part of the pleadings. *See* Fed. R. Civ. P. 10(c); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

2

mediator and date within two weeks of its approval by the court. Before the stipulation was even signed on behalf of the defendants, and a full two weeks before it was approved by the court, I circulated an extensive list of possible mediators and sources for possible mediators. No one responded. Had defense counsel been as prompt as I in commencing their efforts, perhaps we would have been able to schedule a mediation in June before our respective calendars - as well as the calendars of our clients, claims adjustors and the mediator - had become so congested.

Compl. at Ex. A (emphasis in original). On June 6, 2005, Cummins responded:

Given Mr. Heaney's observation in the 1st paragraph of his epistle, it is obvious that the self-serving observations in the 2nd paragraph were for some purpose other than advancing this matter toward a resolution. In this latter connection and given the lapse of time, we need an accurate update on the state of Mr. Clark's health. Please advise asap.

*Id.* That same day, Heaney responded:

Given Mr. Cummins' history of honesty and integrity, we need an accurate update on the state of his grandson's health, including the grandson's full name, the city and state of his residence, and the name and location of the hospital at which the purported emergency surgery occurred.

*Id.* On June 7, 2005, Cummins replied:

Mr. Heaney: ABSENT AN IMMEDIATE AND EXPLICIT APOLOGY - AND WE UNDERSCORE IMMEDIATE - BOTH BY E-MAIL AND IN HARD COPY FORM, YOU WILL FIND YOURSELF A DEFENDANT IN A SERIOUS DEFAMATION ACTION. We also await an update on Mr. Clark which we assume will be forthcoming without the need for Court intervention.

*Id.* (emphasis in original). The correspondence ended on June 7, 2005 with Heaney's reply, "Grow up." *Id.*

Cummins filed this defamation complaint the next day - June 8, 2005. *See* Compl. at p.1. Cummins asserts Heaney's June 6th e-mail is defamatory because it suggests Cummins lied to counsel and the California court about his grandson's emergency in order to obtain a trial continuance. Compl. at ¶ 27. Cummins contends the e-mail is harmful because it: (1) lowers

3

Cummins in the eyes of the community and deters third persons from associating with him; and (2) was sent to Cummins' colleagues, including attorneys at the Shefsky firm, and deters those colleagues from continuing their client referrals. *Id.* at ¶¶ 29-30. Cummins asserts Heaney's statements were false and were known to be false when made. *Id.* at ¶ 34. Finally, Cummins alleges the statements presented him in a false light and were highly offensive. *Id.* at ¶¶ 38-40.

## DISCUSSION

Heaney moves to dismiss the complaint and contends his e-mail communications are protected by the attorney litigation privilege. Illinois law is well-settled that "anything said or written in the course of a legal proceeding is protected by an absolute privilege . . . [t]he purpose of the privilege is to secure to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Zanders v. Jones*, 680 F. Supp. 1236, 1238 (N.D. Ill. 1988); *see also Vazquez v. Sears, Roebuck & Co.*, No. 97 C 8595, 1999 U.S. Dist. LEXIS 16153, *16-17 (N.D. Ill. Sept. 30, 1999); *Libco Corp. v. Adams*, 100 Ill. App. 3d 314, 316-17, 426 N.E.2d 1130, 1131-32 (1st Dist. 1981). Illinois courts have adopted the absolute privilege as set forth by the Restatement (Second) of Torts, § 586. *See Popp v. O'Neil*, 313 Ill. App. 3d 638, 642, 730 N.E.2d 506, 510 (2nd Dist. 2000). Section 586 provides:

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to the proposed judicial proceeding, or in the institution of, or during the course and as part of the judicial proceeding in which he participates as counsel, if it has some relation thereto.

The privilege is consistently applied to false statements made by lawyers in legal proceedings, and the privilege applies to both defamation and false light suits. *See Zanders*, 680 F. Supp. at 1238;

4

*McGrew v. Heinold Commodities, Inc.*, 147 Ill. App. 3d 104, 114, 497 N.E.2d 424, 432 (1st Dist. 1986).

Cummins argues Heaney's June 6th e-mail was not reasonably related to the underlying litigation and the privilege does not apply.[2] The authority cited does not restrict application of the absolute privilege to communications *reasonably* related to the litigation. "The requirement that statements made in a judicial proceeding be pertinent or relevant is not strictly applied. Indeed, the privilege attaches even where the defamatory statement is not confined to specific issues related to the litigation and all doubts should be resolved in favor of a finding of pertinency. Inflammatory matter entirely unrelated to the litigation, however, is not privileged." *Medow v. Flavin*, 336 Ill. App. 3d 20, 32, 782 N.E.2d 733, 744 (1st Dist. 2002). Thus, the only question for the court is whether the allegedly defamatory statements were made during the course of a legal proceeding and were in any way related to that proceeding. *Id.*, *see also Zanders*, 680 F. Supp. at 1238. If so, they are not actionable as a matter of law. *Zanders*, 680 F. Supp. at 1238.

Cummins' contention that the June 6th e-mail was unrelated to the California litigation lacks merit. The e-mail's subject line reads "Mediation - dciv/LABN v. USAB, et al." Compl. Ex. A. The e-mail was part of an e-mail chain between attorneys on the case that pertained to litigation scheduling. Heaney's request for "an accurate update on the state of [Cummins'] grandson's health" was in direct response to Cummins' requeset for "an accurate update on the state of Mr. Clark's health." *Id.* Cummins' grandson's health originally became relevant to the litigation because it necessitated a trial postponement. Heaney's renewed inquiry into Cummins' grandson's health could

---

[2]Cummins also argues the motion should be denied because it attempts to add facts not in the complaint. This argument is rejected because the court has not considered those facts in its ruling.

5

arguably advance his client's interest in connection with litigation scheduling. Although the relevance of Heaney's comment regarding Cummins' honesty and integrity is unclear, the comment occurred in the course of litigation proceedings. Frankly, the e-mail's relation to the underlying California litigation is indisputable.

Cummins asserts Heaney's communication "impugned the integrity of a prominent lawyer and made a mockery of his family tragedy." Reply at 3. Heaney's June 6, 2005 e-mail was in poor taste. Indeed, the sarcastic tone, hostile bickering and lack of civility of the *entire* e-mail chain between all counsel is disturbing. The court agrees with Cummins that "uncivil and junkyard dog litigation tactics" should not be condoned. *See* Compl. at ¶ 1. However, an attorney's responsibility to practice law with integrity includes giving measured consideration to a claim's merits before filing a lawsuit. Reactionary filings are inappropriate and waste judicial resources particularly when the law is well-settled that a cause of action does not exist. Because Heaney's communications are clearly subject to an absolute privilege, this case must be dismissed.

August 31, 2005

ENTER:

Suzanne B. Conlon
United States District Judge